No. 16,018.

Local Union No. 720, International Hod Carriers'
Building and Common Laborers'
Union of America v.
Bednasek et al.
(205 P. [2d] 796)

Decided April 25, 1949.

Mr. EARL J. HOWER, Mr. EDWARD H. SHERMAN, for plaintiff in error.

Mr. WALTER F. SCHERER, Mr. MAX D. MELVILLE, Mr. EDWARD E. PRINGLE, for defendant in error Bednasek.

Messrs. SIMON, LEE & SHIVERS, for defendant in error Boyd.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was plaintiff in the trial court wherein it filed complaint against the defendants on February 17, 1945, alleging in substance that defendants conspired by unlawful means to defraud and unlawfully deprive plaintiff of certain monies and in furtherance thereof, did defraud and deprive plaintiff of the sum of three thousand one hundred four dollars and forty cents. Defendants, by their answer, alleged that they paid themselves salary and expense money in advance, to which they were entitled by virtue of their

election as officers of the union, and that they did so upon a rumor that they were about to be unlawfully removed from their positions, and protected themselves in this manner. Trial was had to the court August 25, 1947, resulting in a finding and judgment for plaintiff against defendant Boyd in the sum of six hundred fifty dollars, and in favor of defendant Bednasek and against the plaintiff. To this finding and judgment, error is assigned. Thereafter, on February 28, 1948, Local Union No. 1432, by a vote of a quorum of its members amalgamated itself with Local Union No. 720 and all of its members became members of Local Union No. 720.

There is little substantial dispute concerning the facts. Plaintiff is an unincorporated association existing under a charter from The International Hodcarriers Building and Common Laborers' Union of America, and is located in Arapahoe county; defendant Bednasek was financial secretary, and defendant Clyde M. Boyd was the business representative and recording secretary of plaintiff and both were regularly elected to their respective offices by the membership of the union, and the salaries and expense accounts of both were fixed by the union at the time of the election.

All of this occurred within local Union No. 1432 before its amalgamation with plaintiff. The defendants were voted a salary of fifty dollars per week and twenty-five dollars per week expense account. The right to this compensation is fixed by Article 7 of the constitution, which is as follows: "Article 7. The officers, business representatives and other members rendering service to the Local shall receive as compensation therefor such sum as is established by the Local prior to their election or appointment; but the Local may, during the term for which the salaried officers or business representatives have been elected or appointed, reduce their compensation if the revenue of the Local is insufficient to meet its necessary expenses and salaries."

The manner of payment is established by section 1 of Article 8 of the constitution, which reads: "Section 1. The President and Treasurer shall *when due pay out* of the funds of the Local all monies due to the International Union and to Central Labor Bodies and District Council and such compensation to officers or members as has been theretofore fixed by the Local in accordance with the By-Laws and practices of said Local. They shall also pay after proper approval by the Local Union, all the regular bills and expenses of the Local."

On December 24, 1943, during the absence of the president of the union, the defendants, with one Arthur White, vice-president, acting in the absence of the president, drew two checks on the funds of the plaintiff then on deposit in the First National Bank of Englewood, Colorado, one for one thousand nine hundred eight and 40/100 dollars to defendant Boyd and the other in the sum of one thousand one hundred ninety-six dollars to the order of defendant Bednasek. Both checks were cashed by the defendants. That thereafter, on the 28th day of December, 1943, the defendants and White called a meeting of the executive board of the local union which was attended by themselves and two other members of the local union, all being members of the executive board, and the defendants at said meeting, all motions made by themselves and voted upon, authorized the issuance of the checks aforesaid as salary and expenses advanced to July, 1944. Defendants claimed that they had heard a rumor to the effect that the international union, with headquarters in Washington, D. C. intended to take over control of said local union and that this action would be unlawful and defendants would be suspended and deprived of the benefit of their salary and expense account. To protect themselves against this action, they paid themselves in the manner just mentioned. A representative of the international did appear and stated, "I want to temporarily check your books. I want to take over your office

and check your books." And defendant Bednasek replied, "I said, O. K. just check me out." No charges were ever filed against the defendants and the action of the international union did not involve the removal or suspension of the charter of the local union or any of its officers or members; however, the defendants immediately obtained other employment and rendered no service to the local after that date, and this was found and determined by the trial court.

The trial court entered the following memorandum of finding, the pertinent parts of which are:

"The Court is of the opinion that the testimony in this case does not disclose a conspiracy or fraud. What the defendants did was done in an attempt to protect themselves or in an attempt to protect what they considered lawful rights. The gist of an action for conspiracy is damage and if there is no damage the action must fall.

"In this case there can be no doubt but what the defendants violated the constitution and by-laws and the practices of the local union by paying themselves in advance. No provision for advance payments of salary or expenses is in the by-laws or was ever made therefor. However the Court cannot understand how the local union was damaged by advance payment of salaries since these officers served or were ready to serve and willing to serve for the balance of the term to which they had been elected and had not been removed.

"Boyd testified that he drew $50 a week salary and $25 a week as expenses. He stated however that the extra $25 was really salary but was given to him as expenses to avoid withholding tax.

"The Court is of the opinion that the $25 per week was expense money. There is no showing in the record that Boyd actually incurred any expenses or performed any duty which called for compensation for expenses or that he in any way lawfully used expense money. It is true the Court does not believe that Boyd drew

this expense money in an attempt to defraud the local union but since the gist of the action is damage the local union has been damaged by the drawing of expense money by Boyd, which would be $25 a week for 26 weeks.

"The Court has prepared and signed findings and judgment and encloses a copy thereof to each attorney." "OES August 25, 1947"

■ ■ The plaintiff contends that the actions of the defendants in paying their salary and expense money in advance was unlawful and fraudulent and deprived plaintiff of funds for which it received no benefit. Defendants contend that their acts were lawful and that they were within their rights in protecting themselves against the contract of employment when they had reason to believe that they were about to be unlawfully removed or suspended from office. They further contend that there is now no proper party to prosecute this action since the original plaintiff has been dissolved and disbanded and the present substituted plaintiff cannot succeed to the rights of the original plaintiff. As is noted, the trial court, on the evidence, found that the defendants violated the constitution and by-laws and practices of the local union by paying themselves in advance. The record discloses ample evidence to support the court's finding on this question and further discussion is unnecessary. Officers or agents of a trade union are bound by the constitution and by-laws thereof in respect to compensation for their services. When a member accepts and assumes the rights and duties of an office, he subscribes to a contract of employment and is bound by the constitution and by-laws of the union which he serves. The defendants were so bound, and unless authority for their actions herein complained of can be found in the constitution and by-laws, then it is clear that they exceeded any power or authority by paying themselves in advance for services not rendered and for expense money not expended. The fact that

they were ready, willing and able to perform all of those duties is not the answer. From the time that the representative of the international took over, about December 28, 1943, there is no showing that either of the defendants continued to function as an officer or representative of the union.

It is clear the defendants conspired to do the thing they admit doing. It was grounded upon their conclusion that they were about to be deprived of the rights of their office and they determined to use this means for protection. The trial court properly found that the gist of an action for a conspiracy is damage, but further found that the local union was not damaged by the advance payment of salaries because the defendants were ready to serve for the balance of the term to which they had been elected and had not been removed. If defendants paid themselves monies that were not due them and which they thereafter did not earn, by such action it cannot be disputed that they took from the treasury of the local union money which did not belong to them and by retaining same damaged the local union. The open and admitted actions of the defendants dispel any suggestion of intended fraud in the sense the term is usually accepted. They made no concealment of what they had done, and we believe they honestly believed they had the right to protect themselves by the means employed; however, this does not relieve them of liability to return money for services they never rendered and which was appropriated without right or authority. The constitution of the union does not provide that compensation attaches to an office as such, but only to those rendering service to the local, and it clearly provides that compensation is to be paid when due. A logical reading would seem to be that when service had been rendered compensation would be due. This leaves no room for the construction of the constitution and by-laws favorable to defendants in legalizing their unlawful

act. The attempt of defendants to ratify their own illegal action was void. They were in a position of trust with the union and as administrative officers they were called upon to act fairly and honestly, and not take advantage of their position of trust to vote unto themselves funds which might not otherwise be granted them according to by-laws and the custom and practice of the union in payment for services.

▮ The contention made by defendants that since local Union No. 1432 dissolved or amalgamated, the union as such went out of existence and cannot represent its members, and that local Union No. 720 is incompetent to sue, we believe, is without merit. All of the members of local Union No. 1432 voted for the amalgamation and it was unanimously approved by local Union No. 720. With the membership of No. 1432 they took all of the monies and property belonging to No. 1432 into local Union No. 720. The original right to institute this action rested in the members of local Union No. 1432 and it was in the nature of a chose in action at the time of the amalgamation. The members did not abandon their cause of action, nor their attempt to recover money that belonged to them, but instead retained that right and transferred it, together with their other tangible property, to local Union No. 720. They had the clear right of assignment, if it be considered such, and the assignee would become the real party in interest in pursuing the interests of its members. If the defendants wrongfully obtained the money, it is unreasonable to even contend that the owners cannot sue. A proper adjudication of this case requires that the rights of the members survive the amalgamation and that the present substituted plaintiff is a proper party and succeeds to the rights of the original plaintiff.

For the reasons herein stated, the judgment is reversed and cause remanded with direction to enter judgment in favor of plaintiff and against both defendants

in the sum of three thousand one hundred four and 40/100 dollars.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE STONE concur.